UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Crescencio Perez-Perez, | ) C/A No. 9:16-3574-CMC-BM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| M.E. Ray, *Warden of F.C.I. Estill, S.C., as an individual and in his official capacity*; C.E. Floyd, *Warden of F.C.I. Estill, S.C., as an individual and in his official capacity*; E. Rainwater, *A.H.S.A., as an individual and in her official capacity*; Dr. Jose Hernandez, *Medical Officer, as an individual and in his official capacity*; B. Parina, *M.D., as an individual and in his official capacity*; Dr. Ross Rames, *as an individual and in his official capacity*; Carolyn V. Rickards, *Regional Director, as an individual and in her official capacity*; Wendy J. Roal, Administrator National Inmate Appeals, as an individual and in her official capacity; Frederick J. Goulding, | ) |
| Defendants. | ) |

This is a civil action filed by the Plaintiff, Crescencio Perez-Perez, pro se, and is before the Court for pre-service review. See 28 U.S.C. § 1915(e)(2)(B); In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir.1997) [pleadings by non-prisoners should also be screened]. Under established local procedure in this judicial district, a careful review has been made of the pro se complaint herein pursuant to the procedural provisions of § 1915 and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Corr., 64 F.3d 951 (4th Cir.1995) (en banc); and Todd v. Baskerville, 712 F.2d 70 (4th Cir.1983).

Section 1915 permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit. However, to protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte. Neitzke v. Williams, 490 U.S. 319. Further, while this Court is also required to liberally construe pro se documents, holding them to a less stringent standard than those drafted by attorneys, Erickson v. Pardus, 551 U.S. 89, 94 (2007)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal court. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir.1990). Such is the case here.

**Allegations and Background**

Plaintiff, a former federal prisoner, alleges claims concerning his medical care beginning in 1996 while he was incarcerated at the Federal Correctional Institution in Estill, South Carolina (FCI-Estill).[1] According to the Complaint, at the time of the alleged incidents Defendant

---

[1] Plaintiff initially filed a two page memorandum with attachments. ECF Nos. 1 and 1-1. In an order dated December 22, 2016, Plaintiff was instructed to complete a complaint form and briefly state the facts of his claim against Defendants and the relief he requests. Plaintiff filed a complaint form with attachments (ECF Nos. 1-4 and 1-5) and later submitted a corrected complaint with attachments (ECF Nos. 1-6 and 1-7). In issuing this report and recommendation, all of these submissions have been considered.

2

Dr. Parina was a medical officer at FCI-Estill, Dr. Frederick Goulding was a physician who does not appear to have been employed at FCI-Estill,[2] Dr. Jose Hernandez was a medical officer at FCI-Estill, Dr. Ross Rames was a physician who worked at the Hampton Medical Regional Medical Center, E. Rainwater was an Assistant Health Services Administrator at FCI-Estill, M. E. Ray was the Warden of FCI-Estill, C.E. Floyd was the Warden of FCI-Estill, Carolyn V. Rickards was the Regional Director for the BOP, and Wendy J. Roal was the Administrator of National Inmate Appeals for the BOP. ECF No. 1-7 at 1-2. Plaintiff's claims are being brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).[3]

Plaintiff alleges that on January 28, 1996, he injured himself after he fell down and hit his penis while running on the FCI-Estill recreation yard. ECF No. 1-7 at 3. On January 30, 1996, he complained to A. Molina, a physician's assistant at FCI-Estill, about pain, lack of erection, and numbness on the left side of his penis. Id.; ECF No. 1-1 at 3. Plaintiff alleges that PA Molina blamed Plaintiff's condition on the medication Plaintiff was taking for hypertension (Plaintiff appears to disagree with Molina's conclusion), no action was taken to alleviate his condition, and he was given no "pills" for pain. ECF No. 1-7 at 3; ECF No. 1-1 at 3. On February 9, 1996, Plaintiff

---

[2] Plaintiff states that he does not know who Goulding worked for at the time of the alleged incidents. ECF No. 1-7 at 1.

[3] Bivens established a direct cause of action under the United States Constitution against federal officials for the violation of federal constitutional rights. See Carlson v. Green, 446 U.S. 14, 18 (1980); see also Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006). A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983; therefore, caselaw involving a § 1983 claim is applicable in a Bivens action, and vice versa. See Harlow v. Fitzgerald, 457 U.S. 800, 818 n. 30 (1982). Although Plaintiff states that his case is brought against federal officials as a Bivens claim and also against state or local officials as a claim under § 1983 (ECF No. 1-6 at 5), it appears that his claim is solely one under Bivens, as the Defendants are all either federal employees of the Federal Bureau of Prisons (BOP) or are private physicians.



3

was examined by Dr. Parina, who allegedly also blamed Plaintiff's medication and referred Plaintiff for a psychological evaluation for a possible cause of impotency. ECF No. 1-7 at 3; ECF No. 1-1 at 4. On April 4, 1996, Dr. Parina also referred Plaintiff to urology for an evaluation and diagnosis of impotency. ECF No. 1-7 at 3; ECF No. 1-2 at 5.

Dr. Jonathan Hauser, chief psychologist at FCI-Estill, performed a medical consultation in May 1996 and opined that Plaintiff's onset and nature of symptoms was not consistent with psychological impotence and that a medical cause appeared more likely. ECF No. 1-1 at 6. On referral from Dr. Parina, Dr. Goulding then performed a urological examination on June 3, 1996, at which time his impression was that Plaintiff had subjective loss of sensation and determined that no treatment was needed. ECF No. 1-7 at 3; ECF No. 1-2 at 5.

On June 5, 1996, Dr. Hernandez reviewed Plaintiff's June 3, 1996 urologist (Dr. Goulding's) evaluation and, allegedly, blamed Plaintiff's medication for his problems. ECF No. 1-7 at 3; ECF No. 1-2 at 6. A urethrogram was then performed by Dr. Stephen J. Gordin at Beaufort Memorial Hospital in December 1996. There was evidence of a stricture involving the anterior urethra distal to the membranous urethra, while the posterior urethra was not visualized which may have been secondary to either spasm or possibly stricture. It was noted that further evaluation with an antegrade voiding cystourethrogram might help in further evaluation if clinically indicated. ECF No. 1-1 at 22. In March 1997, another urethrogram indicated that true stricture of the posterior urethra was suspected based on the two retrograde urethrograms with the same appearance. Dr. Gordin noted that urological consultation and possible urethroscopy were needed for further evaluation. ECF No. 1-7 at 3; ECF No. 1-1 at 23. On April 25, 1997, Dr. Hernandez referred Plaintiff for a urology consultation with a possible urethroscopy. ECF No. 1-7 at 4; ECF No. 1-2



4

at 20. In June 1997, a cystoscopy (and not a urethroscopy) was performed by Dr. Ross Rames at Hampton Regional Medical Center. The cystoscopy was normal with no stricture seen. ECF No. 1-7 at 4; ECF No. 1-1 at 25, 26.

Plaintiff alleges that a urethroscopy, not a cystoscopy, should have been performed. ECF No. 1-7 at 4. Plaintiff also alleges that he never received any medical treatment, and that Defendants were deliberately indifferent to his medical problem. ECF No. 1-7 at 4. Plaintiff lists his injuries as being an urethral obstruction and left side of the penis obstruction. He asserts that there should be an investigation with an "instrument" to detect the problem, and that he did not receive medical treatment and did not receive any pain medication. ECF No. 1-6 at 7.

Plaintiff also complains that Defendant Rainwater denied his Request to Staff Member dated September 3, 1997; Warden Ray denied his Request for Administrative Remedy dated November 19, 1996; Warden Floyd denied his Requests for Administrative Remedies dated September 11, 1997 and March 8, 1999; Defendant Rickards denied his Regional Administrative Remedy Appeal dated October 6, 1997; and Defendant Roal denied his Central Office Administrative Appeal on July 30, 1999. ECF No. 1-7 at 2. He contends that Defendants' actions (or inactions) violated his Eighth and Fourteenth Amendment rights; ECF Nos. 1-1 at 1; 1-6 at 5; and that the Defendants were deliberately indifferent to his serious medical needs. ECF No. 1-7 at 1, 3-4.

A penile ultrasound was performed in California in May 2007 (while unclear, this may have been after Plaintiff was released from incarceration). The conclusion was "[b]ilateral corpus cavernosal arteries identified with findings suggestive of increased density in the arterial walls, raising the question of calcification." ECF No. 1-1 at 13-15. In November 2015, Plaintiff underwent a fluoroscopic retrograde urethrocystography. It was noted that there was narrowing that

5

was symmetrical in the posterior pendulous urethra. The cause of the narrowing was indeterminate, and there was smooth tapering that was possibly due to erection of the corpora. Stenosis could not be excluded since insufficient contrast penetrated into the prostatic urethra and bladder to allow visualization. ECF No. 1-1 at 27.

Plaintiff alleges that he has exhausted his available remedies as to his Bivens claim by filing Requests to Staff Members, Requests for Administrative Remedies, Regional Remedy Appeals, and a Central Office Administrative Remedy Appeal.[4] ECF No. 1-6 at 9. He requests relief of "[p]ain and suffering for their wrongdoing [which caused] stress, anguish, insomnia, shock of conscience. A jury assessment of the extent of [Plaintiff's] injuries or an agreement." ECF No. 1-6 at 7.

**Discussion**

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Deliberate indifference" entails more than ordinary negligence or lack of due care for the prisoner's interests

---

[4]The BOP has a three-tiered administrative grievance process. See 28 C.F.R. §§ 542.10 et seq.; see also Gibbs v. Bureau of Prison Office, 986 F. Supp. 941, 943 (D.Md.1997). An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint (Administrative Remedy Request - on a BP-9 form) to the Warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. Id. If dissatisfied with the response, the inmate may appeal (on a BP-10 form) to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal (on a BP-11 form) to the General Counsel. Id. Appeal to the General Counsel (Central Office) is the final level of agency review. 28 C.F.R. § 542.15(a). A claim has not been administratively exhausted until it has been filed with the General Counsel. Administrative complaints must be filed within 20 days of the date of incident giving rise to the complaint occurred. 28 C.F.R. § 542.14(a).



or safety; it instead requires that a prison official actually "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)[stating that deliberate indifference requires "that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm"]. Here, although Plaintiff alleges that he received "no treatment," he admits (and provides medical records to show) that he saw numerous medical providers at FCI-Estill, and also underwent medical procedures and consultations with specialists outside of FCI-Estill, for his alleged injury during the time he was incarcerated at FCI-Estill. He simply disagrees with the treatment and diagnoses he received. See ECF No. 1-7 at 3-4. For example, he claims that a urethroscopy should have been performed (which he appears to believe would have revealed the cause of his injuries), but instead received a cystoscopy and urtherograms. Similarly, throughout the administrative remedy process Plaintiff is disagreeing with his provided treatment. For example, in his request for administrative remedy dated September 11, 1997, he states that he thinks that Dr. Rames is "wrong" and Dr. Stephen is "right." ECF No. 1-2 at 28.

In sum, Plaintiff's Complaint merely alleges disagreements Plaintiff has with the treatment he received from various medical personnel. A prison inmate "does not enjoy a constitutional right to the treatment of his or her choice." De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013); see also Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988) ["Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."]. While the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary; see Brown v. Thompson, 868 F.Supp. 326 (S.D.Ga.1994); and a disagreement as to

7

the proper treatment to be received does not therefore in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir.1976); Lamb v. Maschner, 633 F.Supp. 351, 353 (D.Kan.1986). Further, mere mistakes in medical judgment are not subject to judicial review in a Bivens action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975); see also Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)[Courts are reluctant to "second-guess the propriety or adequacy of a particular course of treatment."]. Plaintiff's allegations, at best, may be sufficient to set forth claims for malpractice or negligence. However, such claims are not actionable under the Bivens doctrine. See Daniels v. Williams, 474 U.S. 327, 328–336 & n. 3 (1986); Estelle, 429 U.S. at 106 ["Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; Davidson v. Cannon, 474 U.S. 344, 345–348 (1986); Ruefly v. Landon, 825 F.2d 792, 793–94 (4th Cir.1987).

Moreover, even if this Court were to determine that Plaintiff has set forth sufficient allegations to state a claim for medical deliberate indifference, his claims are barred by the applicable statute of limitations. The Fourth Circuit has recognized that the statute of limitations may be addressed sua sponte when such a defense appears on the face of either a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254, see Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002), or a complaint filed in forma pauperis pursuant to 28 U.S.C. § 1915, see Nasim v. Warden, Md. House of Corr., 64 F.3d at 953–54. In Nasim, the Court concluded that, in evaluating a complaint filed in forma pauperis pursuant to § 1915, a district court may consider a statute of limitations defense sua sponte when the face of the complaint plainly reveals the existence of such defense. Id.; see also Hunterson v. Disbabato, 244 F. App'x 455 (3d Cir. 2007) [a district court may sua sponte dismiss a claim as time-barred where it is apparent from the complaint that the applicable limitations period

8

has run]; Castillo v. Grogan, 52 F. App'x 750, 751 (6th Cir. 2002)[district court may sua sponte dismiss complaint as time-barred when the defect is obvious]; Alston v. Tennessee Dep't of Corrs., 28 F. App'x 475 (6th Cir. 2002)["Because the statute of limitations defect was obvious from the face of the complaint, sua sponte dismissal of the complaint was appropriate.]; Pino v. Ryan, 49 F.3d 51, 53–54 (2d Cir. 1995)[concluding that district court can raise statute of limitations defense sua sponte in evaluating complaint filed pursuant to § 1915].

Here, the applicable state law concerning limitation of actions applies in claims brought under Bivens. See Wilson v. Garcia, 471 U.S. 261, 266 (1985), partially superseded by statute as stated in Jones v. R .R. Donnelly & Sons, Co., 541 U.S. 369, 377-380 (2004); Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999)[noting that because there is no statute of limitations for Bivens actions, the district court correctly looked to state law]; Saucillo v. Samuels, No. 12–240, 2013 WL 360258, at *8 (D.S.C. 2013) [Statute of limitations for a Bivens claim is determined by the analogous state law statute of limitation]; see also See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) [Case law involving § 1983 claims is applicable in Bivens actions]. In South Carolina, the applicable statute of limitations is generally three years. See S.C. Code Ann. § 15-3-530. In this case, Plaintiff knew or had reason to know of his injury at the time of his fall.[5] He also knew that he (allegedly) was denied pain medication shortly thereafter, and he knew in June 1997 (when he received a cystoscopy) that he did not receive a urthroscopy. which is the basis for his claim that the Defendants were deliberately indifferent to his serious medical need. Further, he obviously knew of his injury when he expressed this disagreement with his treatment in his Request to Staff Member

---

[5]Federal law governs the question of when a cause of action accrues. See Wallace v. Kato, 549 U.S. 384, 387 (2007). Under federal law, the running of the statute of limitations begins when a plaintiff knows or has reason to know of his injury. Id.



9

and Request for Administrative Remedy in September 1997. See ECF No. 1-2 at 22-23, 26-28. Finally, even if Plaintiff did not know or did not have reason to know he had a claim until he allegedly exhausted the grievance process, he received his final response to his grievance in July 1999, which was more than seventeen years before he filed this action.

Citing Gattis v. Chavez, 413 F. Supp. 33, 39 (D.S.C. 1976), Plaintiff argues that his claims should not be barred by the applicable statute of limitations because his case is being "brought under the discovery rule", under which the limitations period does not begin to run until he discovered (or reasonably should have discovered) the injury giving rise to his claim. Plaintiff argues that the "discovery rule" applies to injuries that are inherently difficult to detect, such as those resulting from medical malpractice. ECF No. 1 at 2. Plaintiff's argument has several defects. First, as noted above, the question of when an action accrues is a question of federal law. Further, the discovery rule referred to by Plaintiff concerns medical malpractice actions, which are not cognizable under Bivens, as discussed above. Additionally, after Gattis, the South Carolina legislature amended the applicable statue to provide a six year statute of repose. See S.C. § 15-3-545; Marshall v. Dodds, 789 S.E.2d 88, 91-92 (S.C.Ct. App. 2016). Subsection 15–3–545(A) provides the following:

> [A]ny action, other than actions controlled by subsection (B), to recover damages for injury to the person arising out of any medical, surgical, or dental treatment, omission, or operation by any licensed health care provider ... must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from the date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence, or as tolled by this section.

The statute's six-year period "constitutes an outer limit beyond which a medical malpractice claim is barred, regardless of whether it has or should have been discovered."; Hoffman v. Powell, 380 S.E.2d 821, 821 (S.C. 1989); and for purposes of this statute, "occurrence" means the time of an



10

alleged negligent treatment, omission, or operation by a medical professional. See, Marshall v. Dodds, 789 S.E.2d at 92; O'Tuel v. Villani, 455 S.E.2d 698, 700 (S.C.Ct.App.1995) [holding the occurrence that triggered the statute of repose was on the date of the child's birth, when a physician failed to perform a caesarean delivery, not seven years later when the parents discovered the child had learning disabilities], overruled on other grounds by I'On, LLC v. Town of Mt. Pleasant, 526 S.E.2d 716, 725 & n. 12 (S.C. 2000); Johnson v. Phifer, 424 S.E.2d 532, 534 (S.C. Ct.App. 1992)[concluding the statute of repose barred a patient's claim against a dentist filed in 1990 when the alleged negligent treatment occurred from 1974 to 1977]. Since Plaintiff received his alleged negligent or wrong treatment on or before June 1997 (the time he underwent a cystoscopy), he filed this action well over the applicable six year period provided by statute.

Additionally, to the extent that Plaintiff is alleging that Defendants Ray, Floyd, Rickards, or Roal violated his constitutional rights by denying his grievances, his claims fail because he does not have a constitutional right to a grievance process, and the denial of his grievances does not therefore state a claim upon which relief may be granted. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); DePaola v.Ray, No. 7:12cv00139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013). Further, any allegations that BOP employees are not following BOP policies or procedures, standing alone, also do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)[if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]; Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)[violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983].

11

To the extent that Plaintiff is attempting to assert tort claims against the federal defendants pursuant to South Carolina law, such defendants are immune from state law claims except to the extent that such claims are brought pursuant to the Federal Tort Claims Act (FTCA). Under this Act, a plaintiff may recover a monetary award from the *United States*[6] for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope ... of employment." 28 U.S.C. § 1346(b). This includes claims under the FTCA for medical malpractice. See Littlepaige v. United States, 528 F. App'x 289, 291–292 (4th Cir. 2013). Whether any federal government employee was negligent or committed malpractice is to be determined "in accordance with the law of the place where the act or omission occurred," here the State of South Carolina. 28 U.S.C. § 1346(b)(1). However, in addition to failing to name a proper party Defendant for an FTCA claim, Plaintiff has not asserted a claim under the FTCA, nor is there any indication that he has exhausted his administrative remedies under the FTCA.[7]

Additionally, in order to pursue a malpractice claim in South Carolina, a plaintiff is first required to file "as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim...."; see S.C.Code Ann. § 15-36-100; and a failure to file such an affidavit with the Complaint requires

---

[6]The United States has not been named as a party Defendant in this case.

[7]Section 2401(b) provides as follows:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

12

dismissal of the case in state court. See Rotureau v. Chaplin, No. 09–1388, 2009 WL 5195968, at * 6 (D.S.C. Dec. 21, 2009). Although Plaintiff's claim has been filed in federal court, the filing of such an affidavit is nevertheless a mandatory prerequisite to the filing of a malpractice claim against the United States under the FTCA in this District. See Chappie v. United States, No. 13–1790, 2014 WL 3615384, at ** 1, 5 (D.S.C, July 21, 2014); Jelks v. United States, No. 12–3451, 2014 WL 1096301, at * 3 (D.S.C. Mar. 19, 2014); Millmine v. Harris, No. 10–1595, 2011 WL 317643 (D.S.C. Jan. 31, 2011) [Holding that pre-suit notice and expert affidavit requirements in S.C.Code Ann. § 15–36–100 and 15–79–125 are the substantive law in South Carolina]; Oakman v. Lincare, Inc., No. 13–428, 2013 WL 3549848 (D.S.C, July 10, 2013). Therefore, this case is additionally subject to summary dismissal because Plaintiff did not file the required expert affidavit with his Complaint. Jelks, 2014 WL 1096301, at * 3 [Before filing or initiating a claim for medical malpractice in South Carolina, a plaintiff must contemporaneously file a "notice of intent to file suit" and expert affidavit which identifies at least one negligent act or omission claimed to exist].[8]

Finally, the Defendants Dr. Goulding and Dr. Rames, who do not appear to have been employees of the BOP, may not even be state actors under Bivens. However, whether they are state actors cannot be determined at this time because it is unclear whether they were under contract with

---

[8]There is a "common knowledge" exception to the affidavit requirement, which applies where the claim "is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." Brouwer v. Sisters of Charity Providence Hosps., 763 S.E.2d 200, 203-204 (S.C. 2014) (citing Carver v. Med. Soc'y of S.C., 334 S.E.2d at 125, 127 (S.C.Ct.App.1985)). This occurs where "the defendant's [alleged] careless acts are quite obvious, [such that] the plaintiff need not present expert testimony to establish the standard of care." Brouwer, 763 S.E.2d at 204. Here, however, the "common knowledge" exception does not apply as Plaintiff alleges that his medical providers disagreed as to what procedures should be performed, while Plaintiff himself advocates that further medical testing or opinions are needed. Thus, it is self evident that Plaintiff would need to present "expert testimony to establish the standard of care" for such claim. See Brouwer, 763 S.E.2d at 203-204.

13

the BOP and therefore might qualify as state actors.  See, e.g., Holly v. Scott, 434 F.3d. 287, 292, n. 3 (4th Cir. 2006)[Dismissing Bivens claim against GEO Group, which provided medical care to federal prison inmates at a privately run facility pursuant to a contract with the Federal Bureau of Prisons, but declining to decide whether employees of a private prison facility under contract with a state are subject to liability under 1983]; West v. Atkins, 487 U.S. 42, 48 (1988)[Holding that private physicians that contracted with the State to provide medical care to prisoners were state actors because they were hired to fulfil an obligation – medical care – which was traditionally filled by the State].  In any event, if they are subject to liability under Bivens, they are entitled to dismissal for the reasons discussed above as to the other Defendants.  Further, even if they are not subject to liability under Bivens and Plaintiff has asserted claims based on South Carolina law based on diversity jurisdiction,[9] Plaintiff's claims are barred by the applicable statute of limitations and his failure to submit an expert affidavit as to any malpractice claims as discussed above.

### Recommendation

Based on the foregoing, it is recommended that the Court dismiss Plaintiff's Complaint without prejudice and without issuance and service of process.

---

[9]Plaintiff asserts jurisdiction pursuant to 28 U.S.C. § 1331 (see ECF No. 1 at 1), but has not specifically alleged diversity jurisdiction.  A district court may have jurisdiction of a civil action asserting a state claim "where the matter in controversy exceeds the sum or value of $75,000...and is between–(1) citizens of different States...".  28 U.S.C. § 1332.  Plaintiff appears to have asserted complete diversity (that he is a citizen of California and that all Defendants are citizens of South Carolina), but it is unclear that he has alleged damages exceeding $75,000.



14

Plaintiff's attention is directed to the important notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

March 2, 2017
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).